IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ARTHUR JACKSON, *Pro Se*       )
                               )
            Plaintiff,         )       Civil Action No. 04-559
                               )
                v.             )       Judge David Stewart Cercone
                               )       Magistrate Judge Lisa Pupo Lenihan
BOB EVANS,                     )
                               )       Doc. 42
            Defendant.         )


## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Motion for Summary Judgment (Doc. 42) filed on

behalf of the Defendant, Bob Evans, should be granted.

### II. REPORT

This case involves a claim of discrimination in employment based on race, religion, and

wages under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title

VII"), as well as a claim of discrimination based on age under the Age Discrimination in

Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*[1] Specifically, Plaintiff Arthur Jackson

contends that Defendant Bob Evans terminated his employment on the basis of his race in violation

of Title VII and his age in violation of the ADEA.  Plaintiff further alleges he was discriminated

against because Bob Evans denied his request for religious accommodation while accommodating

other Caucasian employees' requests for schedule changes, and that he was paid a lower hourly

---

[1]Given Plaintiff's *pro se* status, the Court will liberally construe Plaintiff's filings and requested relief
without regard to technicalities.  *Boyd v. Werner,* 416 F.Supp. 1222, 1224 (W.D.Pa. 1976) (citing *Haines v. Kerner,*
404 U.S. 519, 520 (1972) (other citation omitted)).

wage than Caucasian employees performing the same job (busser).

This Court has subject matter jurisdiction over Plaintiff's claims of discrimination under Title VII and the ADEA pursuant to 28 U.S.C. § 1331, 42 U.S.C.A. § 2000e-5(f)(3), and 29 U.S.C. §626(c).  Venue in this District is proper under 28 U.S.C. § 1391(b).

Four issues are presented in Defendant's motion for summary judgment: (1) Whether Plaintiff has presented a *prima facie* case of race and/or age discrimination; (2) whether Plaintiff has adduced sufficient evidence to prove that Bob Evans' articulated reasons for terminating his employment are pretext for race and/or age discrimination; (3) whether Plaintiff has established that he was denied a religious accommodation based on race; and (4) whether Plaintiff has established that he was paid a lower hourly wage for the same job because of his race.  Because the Court finds that no material issues of fact exist and that Defendant is entitled to judgment as a matter of law, the Court recommends that Defendant's Motion for Summary Judgment be granted.

A.      **Facts and Procedural History**

The following facts, viewed in a light most favorable to Plaintiff, are relevant to the pending motion for summary judgment and largely undisputed.[2]

On March 17, 2002, Plaintiff completed an employment application to work in Bob Evans' Uniontown, Pennsylvania restaurant.[3]  (*See* Pl.'s Dep. at 61; Employment Application ("Empl. App.") at 2.)  Plaintiff claims he was hired on the spot by Joe Martin, General Manger of Bob Evans

---

[2]In response to Bob Evans' Concise Statement of Material Facts, Plaintiff states in conclusory fashion that there is no concrete evidence that supports Defendant's arguments and therefore, he requests summary judgment be denied and the case proceed to trial.  (Doc. 52 at 3.)

[3]Bob Evans operates hundreds of family-style restaurants in 19 states throughout the United States. (Affidavit of Vice President, Regional Director Joseph LeGros ("LeGros Aff.") at ¶ 3.)  Its restaurants are generally managed by a general manager, an assistant general manager, and two assistant managers.  (*Id.* at ¶ 5.)  The general manager makes the decision to hire and terminate employees.  (*Id.*)

at the time, to work as a busser in its Uniontown restaurant.[4]  (Pl.'s Dep. at 78-79; Declaration of Joseph Martin ("Martin Decl.") at ¶ 1.)

On his employment application, Plaintiff states that he had thirty (30) years experience as a dish tank operator, and twenty (20) years experience cleaning and serving.  (Empl. App. at 1; Pl. Dep. at 64-65.) Plaintiff also indicated on his employment application that he was available for work on March 18, 2002, expected to work at least 40 hours per week, and as to availability to work, Plaintiff left that section blank, which Bob Evans construed to mean he was available to work any day and any hour each week.  (Empl. App. at 1; Def.'s Concise Stmt. of Material Facts ("Concise Stmt.") at ¶ 9.)

Prior to signing the employment application, Plaintiff read the Statement of Accuracy, which provides in essence that by signing the application, the applicant is certifying that the information contained in the application is complete and correct, and that he understands that incomplete or incorrect information may be grounds for termination if he is hired.  (Pl.'s Dep. at 59-61; Empl. App. at 2.)   When asked at his deposition about his prior employment experience, however, Plaintiff stated that he did not have any prior employment experience as a busser, dish tank operator, or server; with regard to the statement on the employment application that he had 30 years experience as a dish tank operator, Plaintiff responded, "that's a lie" and stated he could not recall writing it down on the application.  (Pl.'s Dep. at 51-53, 64-65.)  According to Bob Evans, it enforces the certification set forth in its employment applications and will immediately terminate employees who include incorrect or incomplete information in their employment applications.  (LeGros Aff. ¶ 8.)

---

[4]Joseph Martin was the General Manager for the Uniontown restaurant throughout Plaintiff's employment with Bob Evans.  (LeGros Aff. ¶ 6; Martin Decl. ¶ 1.)  Plaintiff did not have any problems with Mr. Martin during his term of employment with Bob Evans.  (Pl.'s Dep. at 86-87.)

Plaintiff's starting hourly wage was $ 5.90, which he found acceptable.  (LeGros Aff. at ¶ 7; Pl.'s Dep. at 79.)  During his term of employment with Bob Evans, Plaintiff received two subsequent pay increases.  (Pl.'s Dep. at 79; LeGros Aff. ¶ 7.)  According to Bob Evans, Plaintiff's starting hourly wage was the same as or higher than 84 percent of the starting salaries of the other bussers hired at the Uniontown restaurant, most of whom were Caucasian, during the term of Plaintiff's employment. ( LeGros Aff. ¶ 7.)  In addition, with his subsequent pay increases, Bob Evans contends that Plaintiff earned the same hourly wage as or more than up to 85 percent of the other Uniontown bussers, most of whom were Caucasian.  (*Id.*)  Finally, Bob Evans maintains that it did not hire any Uniontown bussers at the hourly rate of $ 9.00 or at an hourly rate close to $ 9.00 as alleged by Plaintiff.  (*Id.*)

Bob Evans maintains an employee handbook which incorporates its policies and procedures and is distributed to all employees at the time of their hire.  (LeGros Aff. ¶ 4; Bob Evans Restaurant Division Employee Handbook ("Handbook").)  The Handbook includes Bob Evans' rules, regulations and policies regarding discrimination and sexual harassment, as well as its Open Door Policy, which encourages employees to report any violation of these policies.  (Handbook at 20-21, 2.)  Moreover, the Handbook provides that Bob Evans promptly investigates all claims of sexual harassment and discrimination and any employee found to have violated its policies regarding discrimination and sexual harassment will be disciplined pursuant to the Conduct Work Rules set forth in the Handbook.  (Handbook at 20, 22.)  Plaintiff received a copy of the Handbook and signed an acknowledgment indicating his obligation to familiarize himself and comply with the policies and procedures set forth in the Handbook.  (Pl.'s Dep. at 83-84; Check Sheet for New Employees dated 6/21/02.)

In July 2002, Martin received complaints from several female employees at the Uniontown restaurant that Plaintiff was making sexual comments and sexual advances towards them.[5] (Martin Decl. ¶ 2;  LeGros Aff. ¶ 6 & Tab 1[6].)  In response to these complaints, Martin immediately began an investigation.  (Martin Decl. ¶ 2.)  Martin spoke with the employees who accused Plaintiff of sexual harassment.  (*Id.* at ¶ 3.) Martin also met with Plaintiff on July 26, 2002 and informed him of the charges, which Plaintiff denied and stated he didn't think he had done anything wrong.  (*Id.*; Employee Conversation Sheet dated 7/26/07.)  Martin decided not to terminate Plaintiff; however, he informed him of the seriousness of the complaints and warned him that if any additional complaints were made he would be terminated.  (Martin Decl. ¶ 3; Employee Conversation Sheet dated 7/26/02; Pl.'s Dep. at 122-25.)

In September 2002, additional complaints of sexual harassment were lodged against Plaintiff. (Martin Decl. ¶ 4; LeGros Aff. at Tab 1; Employee Conversation Sheet dated 9/18/02.)  In response to these complaints, Martin met with Plaintiff on September 18, 2002 to discuss the new complaints. (Martin Decl. ¶ 4; Employee Conversation Sheet dated 9/18/02.)  Martin suspended Plaintiff and conducted an investigation, during which he interviewed the five female employees who lodged the complaints of harassment between July and September 2002, and spoke with the witnesses that Plaintiff stated would substantiate that he did not act in a harassing manner.  (Martin Decl. ¶ 4;

---

[5]Bob Evans has redacted the names of the woman who lodged the complaints against Plaintiff because they requested that their identities be kept confidential out of concern for their safety.  *See* Concise Stmt. ¶ 17 n. 1.  Bob Evans has offered to provide the names of the complainants to the Court if required to do so under a confidentiality and protective order.  *Id.*

[6]Plaintiff contends that the statements of the women who lodged complaints of sexual harassment against Plaintiff  (attached to the LeGros Affidavit in Tab 1) are hearsay and therefore cannot form the basis for finding that Plaintiff engaged in sexual harassment.  (Doc. 52 at 1-2.)  As explained *infra*, the veracity of the complaints of sexual harassment is not at issue here in this discrimination action.  *See* Note 15, *infra*.  Therefore, the Court finds no merit to this argument.

Employee Conversation Sheet dated 9/18/02 & 9/22/02.)  After concluding his investigation, Martin

reviewed the evidence and determined that Plaintiff had violated Bob Evans' sexual harassment

policy.[7]   (Martin Decl. ¶ 5; Employee Conversation Sheet dated 9/25/02.)  Subsequently, Martin

met with Plaintiff on September 25, 2002 and informed him that his employment was terminated.[8]

(Martin Decl. ¶ 5; Employee Conversation Sheet dated 9/25/02.)

After his termination from Bob Evans, Plaintiff filed a charge of discrimination with the

Equal Employment Opportunity Commission ("EEOC"), which was dismissed on January 14, 2004

based on the EEOC's determination, after an investigation, that the information obtained did not

establish violations of Title VII and/or the Equal Pay Act.[9]  Thereafter, Plaintiff instituted the present

action on April 13, 2004 asserting a claim for unlawful discrimination against him "because of [his]

request for religious accommodation, wages, race black, in violation of Title VII of the Civil Rights

Act of 1964, as amended, & [his] age 46, in violation of the Age Discrimination in Employment Act

1967, as amended."  (Compl. ¶ 3.)  Bob Evans filed an answer denying these claims and asserting

---

[7]In his second response to the motion for summary judgment, Plaintiff argues that Martin's evidence is all hearsay and must not be admitted because it is not notarized.  (Doc. 50 at 2.)  While the Court acknowledges that hearsay statements that are not capable of being admissible at trial should not be considered on a summary judgment motion, *Blackburn v. United Parcel Serv., Inc.,* 179 F.3d 81, 95 (3d Cir. 1999) (citation omitted), Plaintiff does not specifically identify which evidence would be inadmissible.  If Plaintiff is referring to the statements containing the complaints of sexual harassment, these statements would be capable of admission at trial if they are not offered for the truth of the matter asserted, *i.e.,* to prove the sexual harassment occurred, but rather, to establish the fact that complaints were made. Fed.R.Evid. 801(c).  Here, the Court has only considered the statements as evidence that the complaints were made, not for the truth of the claims of sexual harassment.

[8]Plaintiff's employment was terminated effective September 29, 2002.  (LeGros Aff. ¶ 6.)

[9]It appears from the EEOC Dismissal and Notice of Rights dated January 14, 2004 that the EEOC did not investigate a charge of discrimination under the ADEA, which leads the Court to believe that Plaintiff did not include a claim of age discrimination in the charge filed with the EEOC.  If that is indeed the case, then Plaintiff has failed to exhaust his administrative remedies as to his age discrimination claim.  Bob Evans has not raised this argument in support of its motion for summary judgment, and therefore, if such an argument was possible, it has now been waived.  *Santiago v. City of Vineland,* 107 F.Supp. 2d 512, 529 n. 6 (D.N.J. 2000) (citing *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982); *Commw. of PA Dep't of Public Welfare v. U. S. Dep't of Health & Human Serv.,* 101 F.3d 939, 945 (3d Cir. 1996)) (other citations omitted).

several affirmative defenses.  Discovery is now closed and the motion for summary judgment and opposition have been fully briefed and are ripe for review.

### B.      Standard of Review

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

More specifically, the moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact.  Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a *genuine issue for trial*" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.  *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis added by *Matsushita* Court).  An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### C.      Discussion

Plaintiff has brought a claim for unlawful discrimination alleging that he was terminated from his job as a busser with Bob Evans because of his race (black) and age (46).  In addition, Plaintiff claims he was denied a religious accommodation based on his race and was paid a lower

hourly wage than Caucasian employees performing the same job.

In support of its motion for summary judgment, Bob Evans argues that Plaintiff cannot prove his *prima facie* case of discrimination based on race and/or age because the circumstances under which Plaintiff was terminated in no way support an inference of discrimination.  Bob Evans further argues that Plaintiff cannot show that its proffered reasons for the termination were pretextual because he has failed to produce any evidence of pretext.  As to Plaintiff's discriminatory wage claim, Bob Evans submits that Plaintiff's premise for this claim, that a Caucasian male was hired as a busser one and one-half months after Plaintiff at a wage of $ 9.00 per hour, is not supported by the record, and in fact, the evidence shows that Plaintiff earned an hourly wage equal to or greater than 84 percent of the other bussers at the Uniontown restaurant, most of whom were Caucasian. Finally, as to Plaintiff's claim for denial of religious accommodation, Bob Evans argues that the evidence of record does not show, or create a material issue of fact as to, whether (1) Plaintiff ever informed Bob Evans that his religious beliefs conflicted with a Bob Evans job requirement, *i.e.*, working on Sundays, or (2) that he was disciplined for failing to comply with the conflicting requirement.

In opposition to the summary judgment motion, Plaintiff argues essentially that he is entitled to relief because "all defendants have committed perjury" with regard to the sexual harassment complaints, and that "[he] did nothing wrong as indicated by exhibits."  (Pl.'s Resp. to Summ. J. (Doc. 49) at 1.)  The essence of Plaintiff's argument is that he was falsely accused of sexual harassment, and since he was found not guilty of willful misconduct by the unemployment compensation referee, he is entitled to compensatory and punitive damages in this case to deter

Defendant from committing the same crime against him.[10]  (Doc. No. 49 at 3.)  As to his claims of denial of religious accommodation and wage discrimination, Plaintiff contends that Caucasian employees were treated more favorably than he and therefore he is entitled to judgment in his favor. For the reasons set forth below, the Court finds that Plaintiff's arguments are completely unavailing, while the arguments of Bob Evans are supported by the record and case law.

### 1.    Claims of Discrimination Based on Race and Age

A claim for discrimination based on race and age is analyzed under the legal framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973), which employs the familiar burden shifting  analysis.[11]   Initially, the plaintiff has the burden of establishing a *prima facie* case of employment discrimination.  *Jones v. School Dist. of Philadelphia,* 198 F.3d 403, 410 (3d Cir. 1999).  If the plaintiff successfully establishes his *prima facie* case, the burden then shifts to the employer to "'articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *Id.* (quoting *McDonnell Douglas,* 411 U.S. at 802).  Once the employer carries its burden, then the burden shifts back to plaintiff to prove by a preponderance of the evidence that the legitimate reasons proffered by the employer were not the true reasons, but were merely a pretext for discrimination.  *Id.* (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981)).

A *prima facie* case of race discrimination is established when the plaintiff shows that: (1) he is a member of a protected class; (2) he is qualified for the position; (3) he suffered an adverse

----

[10]In support of this argument, Plaintiff attached his responses to the interrogatories propounded by Bob Evans (Doc. 49 at 5-21.)  However, Plaintiff's responses to those interrogatories do not provide any illumination as to what, if any, evidence exists to support his claims of discrimination.

[11]Plaintiff's Title VII and ADEA claims are governed by the same burden shifting analysis.  *See McKenna v. Pacific R. Serv.,Inc.,* 32 F.3d 820, 825-26 & n. 3 (3d Cir. 1994).

9

employment action; and (4) members outside the protected class were treated more favorably. *Jones,* 198 F.3d at 410-11.  To establish a *prima facie* case of age discrimination under the ADEA, the plaintiff must demonstrate that he: (1) was older than 40 at the time of the discriminatory conduct; (2) was qualified for the job from which he was discharged; (3) was discharged; and (4) was replaced by someone sufficiently younger to give rise to an inference of discrimination. *Fasold v. Justice,* 409 F.3d 178, 184-85 (3d Cir. 2005) (citing *Potence v. Hazelton Area Sch. Dist.,* 357 F.3d 366, 370 (3d Cir. 2004); *Anderson v. Consol. Rail Corp.,* 297 F.3d 242, 249 (3d Cir. 2002)).  The question of whether Plaintiff has established his *prima facie* case is a question of law to be determined by the Court.  *Sarullo v. U. S. Postal Serv.,* 352 F.3d 789, 797 (3d Cir. 2003).

To survive a motion for summary judgment at step three of the burden shifting analysis, the plaintiff must present some evidence from which a reasonable jury could either: "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir. 1994) (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 2749 (1993); *Ezold v. Wolf, Block, Schorr & Solis-Cohen,* 983 F.2d 509, 523 (3d Cir. 1992)).  The Court of Appeals further explained the quantum of proof required at step three:

> To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.  Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them "unworthy of credence," and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons."

*Fuentes v. Perskie,* 32 F.3d at 765 (quoting *Ezold,* 983 F.2d at 531) (other internal quotations omitted).

### a.      *Plaintiff's Prima Facie Case of Discrimination Based on Race and Age*

Bob Evans argues that it is entitled to summary judgment on Plaintiff's discrimination claim because Plaintiff has failed to establish the fourth element of his *prima facie* case of race or age discrimination.  For the reasons set forth below, the Court agrees that Plaintiff has failed to meet this burden.

In order to satisfy the fourth element of his *prima facie* case of race discrimination, Plaintiff must show that similarly situated Caucasian employees were treated more favorably than he. *Sarullo,* 352 F.3d at 798 (citing *Pivirotto v. Innovative Sys., Inc.,* 191 F.3d 344, 352 (3d Cir. 1999); *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 335 n. 15 (1977)).  The Caucasian employees will  be deemed similarly situated if Plaintiff demonstrates that their "acts were of 'comparable seriousness' to his own infraction."  *See Crumpton v. Potter,* 305 F.Supp.2d 465, 472 (E.D.Pa. 2004) (citing *Anderson v. Haverford College,* 868 F.Supp. 741, 745 (E.D.Pa. 1994) (quoting *Linear v. Safeway Grocery,* 843 F.2d 298, 301 (8th Cir. 1988)).  In the context of a discriminatory discipline claim, the courts have found employees to be similarly situated only when they are involved in or accused of the same offense and are disciplined in different ways.  *Wheeler v. Aventis Pharmaceuticals,* 360 F.3d 853, 858 (8th Cir. 2004) (citation omitted). In the Third Circuit, the district courts have expounded on this test:

> "In order for employees to be deemed similarly situated, it has been
> determined that the individuals with whom the plaintiff seeks to
> compare [his] treatment must have dealt with the same supervisor,
> have been subject to the same standards and have engaged in the
> same   conduct   without   such   differentiating   or   mitigating

> circumstances that would distinguish their conduct or the employer's
> treatment of them for it."

*Ogden v. Keystone Residence,* 226 F.Supp. 2d 588, 603 (M.D.Pa. 2002) (quoting *Morris v. G.E. Financial Assurance Holdings,* No. 00-3849, 2001 WL 1558039, at *6 (E.D.Pa. Dec. 3, 2001)); *Tyler v. SEPTA,* No. Civ. A. 99-4825, 2002 WL 31965896, at * 3 (E.D.Pa. Nov. 8, 2002), *aff'd without op.* 85 Fed. Appx. 875 (3d Cir. 2003) (to show that a particular employee is similarly situated, the employee's acts must be of comparable seriousness to plaintiff's own infraction, and engaged in the same conduct without such differentiating or mitigating circumstances); *Anderson,* 868 F.Supp. at 745 (quoting *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992))(same); *see also Bullock v. Children's Hosp. of Philadelphia,* 71 F.Supp. 2d 482, 489 (E.D. Pa. 1999). Moreover, at the *prima facie* prong of the analysis, "evidence of differential treatment of 'a single member of the non-protected class is insufficient to give rise to an inference of discrimination.'" *Pivirotti,* 191 F.3d at 359 (quoting *Simpson,* 142 F.3d at 646).

In support of its argument that Plaintiff failed to establish a *prima facie* case of race and/or age discrimination, Bob Evans submits that Plaintiff has failed to present any evidence that would allow a reasonable fact finder to conclude that he was treated less favorably because of his race and/or age, or that would give rise to an inference that Plaintiff was terminated because of his race and/or age. Bob Evans further submits that Plaintiff has presented nothing more than conjecture and conclusory allegations to support his claims that he was terminated based on his race and/or age.

Preliminarily, the Court notes that unsupported/conclusory allegations of discrimination are not sufficient at the summary judgment stage to create a triable issue of fact. *Jalil v. Avdel Corp.,* 873 F.2d 701, 707 (3d Cir. 1989)) ("conclusory allegations of discrimination, in the absence of particulars, are insufficient to defeat summary judgment."); *Meiri v. Dacon,* 759 F.2d 989, 998 (2d

12

Cir. 1985) (citations omitted) ("conclusory allegations of discrimination are insufficient to satisfy the requirements of Rule 56(e) . . . To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases.");*Tyler,* 2002 WL 31965896, at * 4.  At his deposition, Plaintiff testified that the basis for his claim that race was a determining factor in his termination was that he is a black man accused of sexually harassing five white women.[12]  (Pl.'s Dep. at 216.)  He claims that his termination could not have been based on any factor but race because he did not sexually harass these women.  (*Id.*)  However, the mere fact that Plaintiff and the women accusers are of different races is insufficient to support an inference of discrimination.  *See Morales v. UFCW Local 1776 AFL-CIO,* No. Civ. A. 04-5966, 2005 WL 1266591, at * 5 (E.D.Pa. May 26, 2005) (in case involving a charge of discrimination in the application of CBA, mere assertion by Hispanic plaintiff that he felt discriminated against because both co-worker with whom he had altercations and union steward were African American, without more, was merely a conclusory allegation and insufficient to raise a genuine issue of discrimination); *Miller v. Yellow Freight Sys., Inc.,* 758 F.Supp. 1074, 1078 (W.D.Pa. 1991) (citing *Sola v. Lafayette Coll.,* 804 F.2d 40, 45 (3d Cir. 1986))(general and conclusory allegations that plaintiff was subjected to less favorable treatment than that extended to Caucasian employees lacked any factual support in the record and therefore were insufficient to establish a material issue of fact).  Therefore, Plaintiff's belief that he was discriminated against because he and his accusers are of different races, without more, does not raise an inference of discrimination.  *Tyler,* 2002 WL 31965896, at * 4 (citing *Anderson v. Liberty Lobby, supra,* 477 U.S. at 247-48, 255).

---

[12]Although Plaintiff knows the identity of only one of his accusers, he contends that all of his accusers are Caucasian females because there are no black women working on his shift.  (Pl.'s Dep. at 216.)

Next, Plaintiff attempts to create a triable issue of fact by arguing that Caucasian employees received different or no discipline than black employees for similar conduct.  A review of the summary judgment record, however, does not reveal any support for this argument.  Plaintiff has failed to show that Caucasian employees engaged in acts of sexual harassment, similar to those allegedly engaged in by Plaintiff, towards female co-workers and were either not disciplined or received a less severe discipline, *i.e.,* were not terminated.  Indeed, Plaintiff stated in his deposition that he knew of no other Bob Evans employee who was accused of sexual harassment.  (Pl.'s Dep. at 38.)  Moreover, as to the similarly situated Caucasian males referred to in the Complaint, who Plaintiff contends were found guilty of a violation of Bob Evans' policy but were not disciplined, Plaintiff explained that he was referring to an employee named "Dave", who cussed out Dan (a manager) and nothing happened to him.[13]  (Pl.'s Dep. at 157.)  However, "Dave" is not similarly situated to Plaintiff since the conduct engaged in by "Dave" was not sexual harassment, but rather, insubordination.[14]  Thus, the Court cannot find any evidence in the record to support Plaintiff's claim that he was treated less favorably than similarly situated Caucasian employees in terms of discipline

---

[13]In his Response to Concise Statement of Facts (Doc. No. 51), Plaintiff now states that he was suspended on August 11, 2002 for three days for insubordination with the store manager, Dan, while a Caucasian employee, "Dave," got into an argument with Dan, used profanity, and was advised he would receive a three-day suspension, but it was never imposed.  (Doc. 51 at 2-3 (Pl.'s pg. 1-2).)  There is simply nothing in the record that supports these new allegations.  The Employee Conversation Sheet does not contain an entry on August 11, 2002, or on any date for that matter, indicating that Plaintiff engaged in insubordinate conduct toward the store manager.  Therefore, the Court does not find that Plaintiff has raised a material issue of fact as to whether similarly situated Caucasian employees were treated more favorably vis a vis the alleged insubordination incident with "Dave."

[14]Similarly, general allegations to the effect that Caucasian employees engaged in similar conduct but were not disciplined do not give rise to an inference of race discrimination.  *Jalil v. Avdel Corp.,* 873 F.2d at 707; *Meiri v. Dacon*, 759 F.2d at 998.  Other than an employee named "Dave," Plaintiff does not proffer the identities of the Caucasian employees who allegedly were not disciplined for allegedly engaging in similar conduct.  Without such evidence, it is impossible to determine whether these Caucasian employees were similarly situated to Plaintiff.  Nor does Plaintiff provide any evidence that such incidents were reported to Bob Evans management.  Without some proffer that Bob Evans management was aware of these incidents and took no action, there can be no inference of differential discipline based on race.

received for engaging in sexual harassment conduct.

Not only has Plaintiff failed to proffer evidence to support his claim that similarly situated Caucasian employees were treated more favorably, Bob Evans has produced uncontradicted evidence to show that two similarly situated Causasian male employees in the Pennsylvania area (but not at the Uniontown restaurant) were treated the same as Plaintiff for violations of its sexual harassment policy.  Around the same time as Plaintiff, two Caucasian employees, one of whom was under age 40, were accused of inappropriate sexual comments and/or touching in 2001 and 2002. (Concise Stmt. ¶¶ 32-33; LeGros Aff. ¶ 6.)  According to Bob Evans, it terminated both employees after an investigation and concluding that both employees violated its policy.  (Concise Stmt. ¶¶ 32-33; LeGros Aff. ¶ 6.)

Finally, Plaintiff contends that his termination was unlawful because he did not actually harass the women.  However, so long as Defendant's investigation and determination was based on a reasonable, good faith belief,  the Court may not act as a super-personnel department over an employer's business judgment.  *Hysten v. Burlington N. & Sante Fe R.R. Co.,* 167 F.Supp. 2d 1239, 1245 (D. Kan. 2001); *Kendrick v. Penske Transp. Serv., Inc.,* 220 F.3d 1220, 1233 (10th Cir. 2000) (citation omitted); *Morrow v. Wal-Mart Stores, Inc.,* 152 F.3d 559, 564 (7th Cir. 1998) (citation omitted).  A mistaken but good faith disciplinary decision does not give rise to an inference of discrimination without some showing that the decision was based on Plaintiff's race. *Kariotis v. Navistar Int'l Trans. Corp.,* 131 F.3d 672, 677 (7th Cir. 1997).  Plaintiff's own testimony substantiates that Bob Evan's investigation and determination was based on a reasonable, good faith belief that the accusations of sexual harassment were true.  In this regard, Plaintiff's responses in his deposition are particular relevant:

Q.     Do you believe that Mr. Martin had an obligation to investigate these accusations of sexual harassment in September 2002?

A.     Yes, he does.

Q.     Do you believe that Mr. Martin made up these allegations?

A.     No.

Q,     So you believe that the woman actually did come forward and say that you were harassing them?

A.     If they said it, that's what they said.

(Pl.'s Dep. at 129.)  Thus, there is simply no evidence in the record that Bob Evans' investigation and subsequent disciplinary action were not based on a reasonable, good faith belief that the accusations against Plaintiff were true.[15]  Accordingly, the Court has no authority for overturning the business judgment of Bob Evans, or for finding that it was motivated by discrimination based on Plaintiff's race.

Accordingly, the Court finds that Plaintiff has failed to adduce sufficient evidence to raise a triable issue of fact as to his *prima facie* claim of discrimination based on race.

The Court reaches the same conclusion as to Plaintiff's claim of discrimination based on age. The record is completely devoid of any facts to show that age was a determinative factor in Bob Evans' decision to terminate Plaintiff.  Indeed, Plaintiff's own testimony supports this conclusion. In his deposition, Plaintiff stated that the basis for his claim of age discrimination is his belief that

---

[15]Plaintiff inappropriately focuses on the veracity of the sexual harassment charges against him in support of his discrimination claims.  In essence, Plaintiff argues that the unemployment compensation referee found no willful misconduct on his part and therefore requests that this Court clear his name and award compensatory and punitive damages against Bob Evans "to deter this crime committed on Plaintiff from happening again." (Doc. 49 at 2-3.) Plaintiff has conflated two separate proceedings.  In the present discrimination action, the appropriate focus is on whether the employer has a reasonable, good faith belief that the alleged conduct took place.  Therefore, it is of no moment in this discrimination case that Plaintiff may not have actually engaged in the prohibited conduct. Accordingly, that the unemployment compensation referee may have found no willful misconduct on Plaintiff's part is simply irrelevant to the discrimination claims presently before the Court.

In addition, Plaintiff now alleges for the first time in his response to summary judgment that Mr. Martin stated to him that he did not believe the sexual harassment charges but was required to let him go.  (Doc. 50 at 2.) However, there is no support for this bald assertion in the record, and indeed, the evidence shows that Martin's decision to terminate Plaintiff was based on a reasonable, good faith belief that the accusations were true.

16

Bob Evans thought that an elderly man (age 44 at the time of his deposition) such as Plaintiff maybe should have known better.  (Pl.'s Dep. at 145.)  That statement is the sole support for Plaintiff's claim of age discrimination.  Plaintiff does not identify any younger employees who replaced him, or who were treated more favorably.  Therefore, as Plaintiff's only support for his age discrimination consists of conclusory allegations, Plaintiff has failed to meet his burden under the fourth element of his *prima facie* case of raising an inference of discrimination based on age.

Having failed to establish a *prima facie* case of discrimination based on race or age, Plaintiff's discrimination claims based on race and age cannot survive summary judgment.

### b.   *Whether Bob Evans' Articulated Reasons Are Merely a Pretext for Discrimination*

Even if this Court were to conclude that Plaintiff had adduced sufficient evidence to establish a *prima facie* claim of discrimination based on race and/or age, Plaintiff is still unable to withstand summary judgment as he has failed to raise a triable issue of fact as to whether the Bob Evans' articulated reasons for discharging him were pretext for discrimination.  In particular, Plaintiff has failed to adduce any evidence from which a reasonable jury could either disbelieve Bob Evans' articulated legitimate reasons or believe that Plaintiff's race and/or age was more likely than not a motivating or determinative cause of his termination.

Bob Evans provided the following reason for terminating Plaintiff's employment:

> In September 2002, I received additional complaints that Mr. Jackson was acting in a sexually inappropriate manner.  I suspended Mr. Jackson and conducted another investigation.   During the investigation, I spoke with the five female employees who alleged the harassment and I spoke with witnesses Mr. Jackson stated would After I substantiate my investigation, I reviewed the evidence collected.  I concluded that Mr. Jackson had violated the Company's sexual harassment policy and I terminated his employment.

17

Martin Decl. ¶¶ 4-5; Employee Conversation Sheet dated 9/25/02.)  Bob Evans argues that Plaintiff cannot show that its articulated reasons for his discharge were pretextual because it is undisputed that Martin, after an investigation, relied in good faith on the complaints of five female employees that Plaintiff was sexually harassing them, and the conduct of which Plaintiff was accused was grounds for immediate termination under Bob Evans' sexual harassment policy and Work Conduct Rules.

At the outset, the Court notes that the relevant inquiry regarding pretext is not whether Bob Evans' decision to terminate Plaintiff was wrong or a mistake, but rather,  whether Bob Evans acted with discriminatory animus.  *Abramson v. William Paterson Coll. of N.J.,* 260 F.3d 265, 283 (3d Cir. 2001) (citing *Fuentes*, *supra*); *Wheeler,* 360 F.3d at 859 (citation omitted); *see also Kariotis,* 131 F.3d at 677 (citation omitted) (holding the employer's reason for discharging plaintiff, which was based on an allegedly imprudent, ill-informed, and inaccurate investigation of disability fraud, if honestly described, would not establish pretext);  *Kendrick,* 220 F.3d at 1231-32 (holding that where employer, after an investigation, made its disciplinary decision based on its belief that plaintiff committed the alleged acts, evidence that plaintiff did not actually commit the misconduct was not sufficient to show pretext); *McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1129 (10th Cir. 1998) ("An articulated motivating reason is not converted into pretext merely because, with the benefit of hindsight, it turned out to be poor business judgment.") (citation omitted); *Hysten,* 167 F.Supp. 2d at 1245 (citation omitted) (holding in a differential discipline case, the relevant inquiry at the pretext stage is whether the employer "reasonably believed the harassment and/or discrimination allegations and acted on them in good faith").

The court of appeals analysis of the pretext inquiry in *Kariotis* is particularly instructive.

In that case, the Eighth Circuit held that the employer's reason for discharging plaintiff, which was based on an allegedly imprudent, ill-informed, and inaccurate investigation of disability fraud, if honestly described, would not establish pretext. 131 F.3d at 677. The court of appeals further opined that plaintiff's attack on the employer's decisional process was misspent unless she was able to adduce evidence suggesting that the employer investigated her differently because she was on disability leave. *Id.* In that case, plaintiff failed to produce any evidence that her employer approached her case differently than others. *Id.* The court of appeals concluded, therefore, that plaintiff had not established that the employer's proffered reason for termination was based on illegal discrimination.

In the instant case, Plaintiff does not offer any argument or evidence of alleged weaknesses, implausibilities and inconsistencies that would cast doubt on Bob Evans' proffered reasons for Plaintiff's termination, other than to challenge Bob Evans' conclusion regarding its underlying investigation of the sexual harassment complaints lodged against Plaintiff. Plaintiff's focus on the underlying investigation is misplaced for two reasons. First, Bob Evans' investigation of the sexual harassment complaints was based on a valid business judgment and therefore, the Court is not permitted to review the logic behind Bob Evans' business decisions.[16] *Wheeler,* 360 F.3d at 859 (citation omitted); *Billet v. Cigna Corp.,* 940 F.2d 812, 825 (3d Cir. 1991), *overruled on other grounds in Hicks, supra,* 509 U.S. 502 ("Barring discrimination, a company has the right to make business judgments on employee status, especially when the decision involves subjective factors deemed essential to certain positions."); *see also Geddis v. Univ. of Delaware,* No. 01-2298, 40 Fed.

---

[16]Interviews of relevant witnesses, *i.e.,* victims and witnesses of the alleged misconduct, have been deemed sufficient to withstand court intervention in an employer's business judgment. *Wheeler,* 360 F.3d at 859. In the instant case, Bob Evans interviewed the female co-workers who lodged the complaints, as well as Plaintiff and two of his witnesses. Thus, the Court does not find any basis to review the business judgment of Bob Evans.

Appx. 650, 653, 2002 WL 1587656, *3 (3d Cir. Mar. 8, 2002) (allegations of inadequate investigation not sufficient to show employer acted with discriminatory animus).  Second, Plaintiff's focus on the underlying investigations is merely a distraction, since evidence that he did not actually commit the misconduct or that the investigation was somehow deficient is not sufficient to show pretext, where he has also failed to produce any evidence that Bob Evans approached the sexual harassment complaints against him  differently than any similar complaints lodged against Caucasian or younger employees.  *Billet,* 940 F.2d at 825; *Kendrick,* 220 F.3d at 1231-32; *Kariotis,* 131 F.3d at 677.  The record is devoid of any evidence suggesting that Bob Evans approached reported complaints of sexual harassment differently depending on the race or age of the employee.

In conclusion, Plaintiff has not produced, nor has the Court been able to find, any evidence of inconsistencies or contradictions in Bob Evans' explanation for terminating Plaintiff's employment.  Bob Evans has consistently maintained that its reason for terminating Plaintiff's employment were the complaints of sexual harassment in July and September 2002.  The complaints against Plaintiff and Bob Evans' investigations of them are well documented.  Thus, the Court does not find any evidence from which a reasonable jury could either disbelieve Bob Evans' reasons for terminating Plaintiff, or believe that Plaintiff's race and/or age was more likely than not a motivating or determinative cause of his termination.  Accordingly, Plaintiff has failed to satisfy his burden of raising a triable issue of fact as to pretext.  Therefore, the Court recommends that Defendant's Motion for Summary Judgment be granted as to his claims of discrimination based on race and age.

### 2.    **Claim for Discrimination Based on Religion**

Plaintiff also contends that he was denied a request for religious accommodation based on

his race while Caucasian employees who requested schedule changes were accommodated.  In support of this contention,  Plaintiff submits that he made two requests that he not be scheduled for work on Sundays so that he could attend church services,[17] which were denied, while schedule changes were granted to Caucasian employees with less time on the job than he.  He further contends that Bob Evans posted a sign for college students to notify management of needed schedule changes to attend college.  (Compl. ¶ 3; Pl.'s Response to Concise Stmt. at 3-4 (Doc. 51 at 4-5) .)

In response, Bob Evans argues that Plaintiff failed to inform it that he held a religious belief that conflicted with an employment requirement. Specifically, Plaintiff never informed Bob Evans of the reason why he needed Sundays off, *i.e.,* to attend church services.  In addition, Bob Evans contends that Plaintiff has failed to demonstrate that he was disciplined for any conflict between his religious beliefs and Bob Evans' scheduling policy.  Also, Bob Evans submits that no evidence exists to show that Caucasian employees were treated more favorably with regard to schedule changes to accommodate religious beliefs.  Accordingly, Bob Evans requests summary judgment in its favor on Plaintiff's claim for religious discrimination.

Under Title VII, employees may assert two theories of religious discrimination: (1) disparate treatment, and (2) failure to accommodate.  *Abramson v. William Paterson Coll. of N.J.,* 260 F.3d 265, 281 (3d Cir. 2001) (footnote and citations omitted). Construed liberally, Plaintiff's complaint appears to assert both theories of religious discrimination.   To state a claim of religious discrimination under the disparate treatment theory, a plaintiff must demonstrate that the employer

---

[17]Plaintiff does not indicate when he first requested that he not be assigned to work on Sundays.  The second request was made on September 22, 2002, when he arrived for his meeting with Joe Martin to discuss the results of the investigation into the second round of complaints of sexual harassment and was advised that the investigation was not yet completed.  At that time, Plaintiff claims he asked for his schedule to be changed so he could attend church on Sundays.

had a discriminatory motive. *Aron v. Quest Diagnostics Inc.,* No. Civ. A. 03-2581, 2005 WL 1541060, * 3 (D. N.J. June 30, 2005) (citing *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003)). In analyzing a religious discrimination claim under this theory, the courts have applied the familiar burden-shifting framework of *McDonnell Douglas, supra. Id.*; *Abramson,* 260 F.3d at 281.

In support of the disparate treatment theory, Plaintiff attempts to argue that similarly situated Caucasian employees were treated more favorably than he when requesting religious accommodation. However, this claim must fail. In his deposition, Plaintiff stated that he recalled Caucasion employees asking for time off of work to attend college, but he did not recall what days of the week they requested off, nor did he recall Caucasian employees asking for time off for any other reason. (Pl.'s Dep. at 156.) Plaintiff further testified that he did not recall any employee other them himself requesting Sundays off. (*Id.*) Inasmuch as Plaintiff has failed to identify any of these Caucasian employees who allegedly were treated more favorably than he as to scheduling, his allegations are conclusory at best and therefore insufficient to create an issue of fact from which an inference of discrimination can be inferred. Therefore, the Court finds Plaintiff has failed to state a *prima facie* case of religious discrimination under the disparate treatment theory.

In order to state a *prima facie* claim for religious discrimination based on failure to accommodate, Plaintiff must demonstrate: (1) "he held a bona fide religious belief that conflicted with an employment requirement;" (2) "he informed the employer of this belief; and" (3) "he was disciplined for failing to comply with the conflicting employment requirement." *Storey v. Burn Int'l Sec. Serv.,* 390 F.3d 760, 767 n. 17 (3d Cir. 2004) (concurring op.) (citing *Shelton v. Univ. of Med. & Dentistry of N.J.,* 223 F.3d 220, 224 (3d Cir. 2000)); *EEOC v. Reads, Inc.,* 759 F.Supp. 1150, 1155 (E.D.Pa. 1991) (citing *Protos v. Volkswagen of Am., Inc.,* 797 F.2d 129, 133 (3d Cir. 1986))

(other citation omitted).  Once the plaintiff has met his burden of establishing a *prima facie* case, the burden shifts to the employer to show that "it has offered the employee 'reasonable accommodation' or that the accommodation sought cannot be accomplished without undue hardship."[18]  *Id.* (citing *United States v. Bd. of Ed. for Sch. Dist. of Phila.,* 911 F.2d 882, 886-87 (3d Cir. 1990)).  It is clear from the record that Plaintiff has failed to establish both the second and third elements of a *prima facie* case for failure to accommodate.[19]

With regard to the second element, the record shows that Plaintiff did not indicate any restrictions on the days he could work on his employment application.  In addition, Plaintiff testified at his deposition that he did not recall specifically what he said when he requested Sundays off; it was something to the effect that he did not want to work on Sundays.  (Pl.'s Dep. at 149.)  When asked if he recalled mentioning anything about church in his request, Plaintiff replied "[i]f I would request Sundays off, that would be to go to church, yes."  (*Id.* at 149-50.)  When asked if it was possible that he did not discuss with Mr. Martin the reason he needed Sundays off, Plaintiff responded, "If you say so."  (*Id.* at 150.)  The general manager, Joseph Martin, stated in his declaration that he did not recall any requests from Plaintiff for Sundays off, or any statements from him that he wanted Sundays off for religious reasons.  (Martin Decl. ¶ 6.)

At best, the evidence here shows that Plaintiff may have requested Sundays off, but he never communicated the reason for his request.  Plaintiff's own testimony suggests his reason was only implied from the fact that he asked for *Sundays* off.  This is insufficient to satisfy the requirement

---

[18]An employer can show an undue hardship if its accommodation requires it to incur more than a "*de minimis cost.*"  *Read, Inc.,* 759 F.Supp. at 1155 (citing *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 84 (1977)).

[19]Bob Evans assumes only for purposes of its summary judgment motion that Plaintiff holds a sincere religious belief.  Therefore, the Court will not address the first element of Plaintiff's failure to accommodate claim.

that he inform his employer of a bona find religious belief *that he holds*.  The connection Plaintiff asks this Court to draw between his request for Sundays off and the existence of a bona fide religious belief on his part which conflicts with working Sundays, is simply too attenuated to satisfy the second element.

As to the third element, Plaintiff testified at his deposition that he never refused to come to work on a Sunday because he would have been terminated if he refused.  (Pl.'s Dep. at 156-57.) Yet, Plaintiff worked each Sunday he was scheduled to work and there is no evidence that he worked under protest.  Thus, the evidence does not show that Plaintiff was disciplined for failing to work on Sundays due to a bona fide religious belief.  Accordingly, Plaintiff cannot meet his burden as to the third element of a *prima facie* claim of religious discrimination.

Accordingly, since Plaintiff has failed to raise a triable issue of fact under either a disparate treatment theory or failure to accommodate theory of religious discrimination, the Court finds that Bob Evans is entitled to summary judgment as to this claim.

### 3.    Wage Discrimination Claim

Plaintiff contends that Bob Evans paid a Caucasian employee a higher hourly wage than the hourly wage paid to him, a black employee, for essentially the same job.  Therefore, Plaintiff argues, Bob Evans discriminates based on race as to the wages it pays its employees.  Bob Evans submits that the premise upon which Plaintiff bases his wage discrimination claim is wrong, and further, Plaintiff earned more per hour than the majority of his Caucasian counterparts.

To establish a *prima facie* case for unequal compensation based on race, the plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he is qualified for the job; and (3) he was paid at a lower rate than similarly situated employees.  *Harden v. Southwark Metal Mfg. Co.,*

24

No. Civ.A. 99-4666, 2002 WL 31194220, *7 (E.D.Pa. Oct. 2, 2002) (citing *Cooper v. Southwark Metal Co.,* Civ. A. No. 91-6961, 1992 WL 236285, * 1 (E.D.Pa. Sept. 11, 1992)).  There is no dispute here that Plaintiff meets the first two requirements of a *prima facie* case of wage discrimination.  As to the third requirement, Plaintiff stated in his deposition that an employee, whom he believes is named "Bob," was hired one and one-half months after him to work in the kitchen with Plaintiff, and started at $ 9.00 an hour, while Plaintiff was hired at $ 6.00 or $7.00 per hour to start.[20]  (Pl.'s Dep. at 163.)  The alleged higher pay to "Bob" is the sole basis for Plaintiff's claim of wage discrimination.  (Pl.'s Dep. at 164.)

First, it does not appear that "Bob" and Plaintiff are similarly situated employees.  Plaintiff admitted at his deposition that "Bob" had prior experience working at another restaurant and that may have been the reason he was paid a higher hourly wage.  (Pl.'s Dep. at 163.)  Thus, Plaintiff's own admission appears to suggest that "Bob" and he were not equally qualified and therefore a nondiscriminatory basis exists for the alleged unequal compensation.

Second, Plaintiff has nothing to substantiate his claim of the hourly rate paid to "Bob" other than what he claims he was "told," and his recollection cannot stand up to the payroll records of the employer.  Bob Evans maintains employment and payroll records in the regular course of business. (LeGros Aff. ¶ 6.) These records substantiate the hourly wages of its employees.  In this regard, Bob Evans reviewed the payroll records of Plaintiff and of all the other bussers who worked at the Uniontown restaurant at the same time Plaintiff was employed there.  (LeGros Aff. ¶ 7.) Bob Evans determined that no Uniontown busser was hired at an hourly rate of $ 9.00 or at an hourly rate close to that.  (*Id.*)  Moreover, based on its review of the payroll records, Bob Evans attested that

---

[20]Plaintiff claims that both "Bob" and the general manager, Joe Martin, told him what "Bob" was earning. (Pl.'s Dep. at 162-64.)

Plaintiff's starting wage was actually $ 5.90 per hour, and it was the same as or higher than 84 percent of the starting salaries of the other Uniontown bussers hired during the same time, most of whom were Caucasian.  (*Id.*)  Bob Evans further attested that after subsequent raises, Plaintiff was earning $ 6.40 per hour, which was the same wage as or more than 85 percent of the other Uniontown bussers, most of whom were Caucasian.  (*Id.*)  Thus, Plaintiff's recollection as to *one* Caucasian busser, as opposed to the regularly maintained payroll records of Bob Evans documenting the salaries of the entire group of bussers, is simply insufficient to raise a triable issue of fact as to whether Plaintiff was paid less than equally qualified Caucasian bussers.

In addition, Plaintiff's reliance on the alleged differential treatment of *one* Caucasian busser is insufficient to give rise to an inference of discrimination.  *Pivirotti,* 191 F.3d at 359 (quoting *Simpson,* 142 F.3d at 646).  Plaintiff cannot selectively choose a comparator who was treated more favorably and ignore others who were treated equally or less favorably.  *Simpson,* 142 F.3d at 645-46.  In this case, Plaintiff singled out "Bob," whom he believed to be earning a higher hourly wage, but, as it turns out, "Bob" may not be an appropriate comparator.  In any event,  Bob Evans has reviewed its payroll records and determined that 84 to 85 percent of the bussers, many of whom were Caucasian, were making the same hourly rate or less than what Plaintiff was earning.  Plaintiff does not dispute this statistic and therefore, he cannot completely ignore a significant group of comparators (Caucasian bussers) who were treated equally or less favorably than he and still hope to survive a motion for summary judgment.  *Simpson,* 142 F.3d at 646.  In this situation, Plaintiff must produce other evidence from which discrimination can be inferred, *id.* (citing *Bush v. Commw. Edison Co.,* 990 F.2d 928, 931 (7th Cir. 1993)), which he has failed to do.

Therefore, the Court finds that Bob Evans is entitled to summary judgment on Plaintiff's

claim of wage discrimination because Plaintiff has failed to adduce any evidence from which a reasonable jury could either disbelieve Bob Evans' articulated legitimate reasons or believe that Plaintiff's race was more likely than not a motivating or determinative factor in arriving at the amount of his compensation.

### III.   <u>CONCLUSION</u>

For the reasons set forth above, it is respectfully recommended that the Motion for Summary Judgment filed on behalf of Defendant, Bob Evans, should be granted.

Dated:  December 4, 2006                    By the Court:

LISA PUPO LENIHAN
U.S. Magistrate Judge

cc:     Honorable David Steward Cercone
        United States District Court

        Arthur Jackson, *Pro Se*
        23 Circle Road
        Daisytown, PA 15427

        All Counsel of Record
        *Via Electronic Mail*